## CIRCUIT COURT OF FAIRFAX COUNTY

Eastern Sleep Products

v.

Tradetech Products International
and Steve Harrison

November 22, 1993

Case No. (Law) 124633

BY JUDGE THOMAS A. FORTKORT

This matter came before the Court on plaintiff Eastern Sleep Products' Motion for Summary Judgment against corporate defendant, Tradetech Products International and individual defendant, Steve Harrison. The Court awarded summary judgment to plaintiff against corporate defendant, but with regard to the individual defendant, the Court heard oral argument and took the matter under advisement. For the reasons set forth below, the Court overrules the Motion for Summary Judgment against Harrison.

The events leading to this litigation are outlined in the parties' memoranda. Plaintiff and defendant entered into a business relationship whereby plaintiff sold mattresses and other sleep products to defendant, a retailer of those goods. Defendant Harrison is the owner and president of defendant Tradetech Products, which traded as Discount Mattress Mart. Harrison signed an Application for Credit as "Steve Harrison, Pres." In addition, Harrison signed two documents (dated May 15, 1992, and September 10, 1992) entitled "Guaranty," as follows: "*Steve Harrison* [signature] President, Discount Mattress Mart [typed]" Under the terms of the Application for Credit, payment was due upon receipt of each shipment. When certain payments were not forthcoming, plaintiff brought suit against Harrison and Tradetech.

Plaintiff moved and was granted summary judgment against the corporate defendant. As against Harrison, plaintiff argues that Harrison's

signature on the personal guaranty of September 10, 1992, manifests his personal liability for the corporation's debt. Plaintiff insists that the nature of a guaranty contemplates three distinct parties and by placing his name on that guaranty, Harrison is personally liable for the debt of the corporation. Harrison argues that his endorsement on the guaranty was in the capacity of agent for the corporation and therefore only the corporation is liable. Alternatively, Harrison seeks to introduce parol evidence which would indicate that it was the parties' intent at the time of contracting that Harrison was not to be held personally liable in the event of default by the corporation.

Harrison's first argument is that his signature on the document in question is clearly and unambiguously that of an agent of the principal corporation. Harrison contends that the signature contained on the guaranty clearly discloses the agency relationship. "In the absence of a manifestation to the contrary therein, an unsealed written instrument is interpreted as the instrument of the principal and not of the agent if, in the signature or description of the parties, the name of the principal and agent both appear, the agent indicating his agency." Restatement (Second) of Agency, § 156. Harrison asserts that the position of his signature directly over the "President" designation removes any doubt that he is acting solely as an agent for the corporation. "The word 'president' . . . in a description of the parties or in a signature of an instrument has substantially the same effect as the word 'agent' in determining who are parties thereto; also of the same significance are other similar words by one who, in performing the duties of this office, ordinarily acts as an agent." Restatement (Second) of Agency, § 156 (Comment).

Although the Court is not prepared to find the agency relationship unequivocally clear from the face of the document, the Court finds a different provision of the Restatement more compelling. The comment to Restatement § 155 suggests that "unless the instrument unambiguously includes or excludes the principal or agent from the contract, extrinsic evidence is admissible to prove the intent of the parties."

Several early Virginia decisions are in keeping with the Restatement view. In *Walker v. Christian*, 62 Va. (21 Gratt.) 291 (1871), the Virginia Supreme Court of Appeals held that in cases where the principal is disclosed on the face of the instrument, "parol evidence to show an intention to make the principal, and not the agent, liable is perfectly consistent with the written evidence and is, therefore, not inadmissible

upon the ground that it contradicts or varies a written contract." *Walker*, 62 Va. at 295. A later case, *Strause v. Richmond & C. Co.*, 109 Va 724 (1909), although couched in terms of promoter liability, offers a similar analysis. In reversing the lower court, the *Strause* court wrote, "the general rule as to a promoter's liability cannot, in reason or fair dealing, be carried to the extent of holding him liable in the face of his contract against liability . . . in determining the question whether or not he has been freed from liability by the other contracting party . . . [the] fact of an agreement that he was not to be liable is not to be ignored." *Strause*, 109 Va. at 731.

To reinforce his position, Harrison directs the Court's attention to Code of Virginia § 8.3A-402. This newly enacted provision contemplates the situation at bar, where "the form of the signature [of an agent] does not show unambiguously that the signature is made in a representative capacity." Code of Virginia § 8.3A-402(b)(2). The official comment to subsection (b)(2) fully anticipates the introduction of parol evidence to illuminate the intent of the parties. However, because the provision was clearly designed to clarify interpretation of negotiable instruments only, its application in the instant situation is not mandatory. Nonetheless, the Court is persuaded by the Restatement view and finds that parol evidence is admissible in the instant case to prove the parties' true intention behind the written document. The Court, therefore, overrules plaintiff's Motion for Summary Judgment.